**Euceda v. Green**

318

C.P. of Lackawanna County, No. 13 CV 3373

*Shanin Specter, Andrew S. Youman* and *Mark S. Polin,* for plaintiffs.

*Eugene P. Feeney* and *Ryan R. BcBride,* for defendant Barry Green, D.O.

*Stuart T. O'Neal, III, M. Sean Maravich* and *Daniel A. Cutler,* for defendants Moses Taylor Hospital and Scranton Quincy Hospital Co., LLC.

NEALON, *J.,* Aug. 20, 2014—The defendant obstetrician and his counsel in this malpractice action have appealed the special trial master's imposition of monetary sanctions of $1,000.00 as a result of defense counsel's eleventh-hour cancellation of plaintiffs' depositions that were scheduled by defense counsel. Plaintiffs have filed a cross-motion for additional sanctions under Pa.R.C.P. 1023.1 — 1023.4 on the ground that the obstetrician's discovery appeal is frivolous.

Once a party or lawyer notices a deposition pursuant to Pa.R.C.P. 4007.1, [s]he assumes the concomitant duty under Pa.R.C.P. 4019(e) to promptly notify all other counsel and parties of the cancellation of that deposition before those individuals have incurred travel and pre-deposition preparation expenses. The discovery record reflects that, notwithstanding the fact that (1) plaintiffs' counsel confirmed by email in the late morning of April 29, 2014, that plaintiffs' noticed depositions in Scranton would proceed forward as scheduled by defense counsel for the early morning of April 30, 2014, and (2) defense counsel knew that the law office of plaintiffs' counsel is in Philadelphia, defense counsel unilaterally cancelled those depositions on the afternoon of April 29, 2014, almost three hours after receiving the email confirmation from plaintiffs' counsel that the depositions would "go on as planned tomorrow." Upon being notified of defense counsel's last-minute cancellation of the depositions, plaintiffs' counsel immediately contacted defense counsel's office and requested that the depositions proceed as scheduled in light of the presence of plaintiffs and their counsel in Scranton,

but defense counsel declined to do so.

Since it was reasonably foreseeable to defense counsel that plaintiffs' counsel would travel to Scranton to prepare plaintiffs for their depositions prior to the time that defense counsel belatedly notified them of the cancellation of those depositions, an award of counsel fees and travel expenses to plaintiffs is warranted under Rule 4019(e). Consequently, the special trial master's sanctions order will be affirmed, but the remedial award will be increased to $1,347.30 to reflect the full amount of reasonable counsel fees and travel expenses related to the aborted depositions. However, since (a) plaintiffs never served the defense with a written demand for the withdrawal of this discovery appeal, (b) Rules 1023.1 — 1023.4 do not apply to discovery motions, and (c) no reported decision previously applied Rule 4019(e) to a request for monetary sanctions following an untimely cancellation of a noticed deposition, plaintiffs' cross motion for additional sanctions under Rule 1023.1 will be denied.

## I. FACTUAL BACKGROUND

On June 24, 2013, plaintiffs, Alex Geovany Euceda ("Euceda") and Maria Castillo ("Castillo"), filed this medical malpractice action against Castillo's obstetrician, Barry Green, D.O. ("Dr. Green"), his practice group, Women's Care Consultants, P.C., and Scranton Quincy Hospital Company, LLC d/b/a Moses Taylor Hospital ("Moses Taylor"), alleging the negligent management of Castillo's labor and delivery at Moses Taylor, which resulted in the death of plaintiffs' eight day old son due to severe hypoxic-ischemic encephalopathy. (Docket entry no. 1). Nine days later, Euceda and Castillo filed certificates of merit as to each named defendant pursuant to Pa.R.C.P. 1042.3, (docket entry nos. 2-5), thereby triggering their

right to conduct discovery depositions. *See* Pa.R.C.P. 1042.5 (stating that with the exception of document requests or entry upon property for inspection purposes, a malpractice plaintiff "may not, without leave of court, seek any discovery with respect to that claim prior to the filing of a certificate of merit."). By letter dated August 19, 2013, plaintiffs' counsel served written discovery requests upon Dr. Green's counsel, Weber Gallagher Simpson Stapelton Fires & Newby, LLP ("Weber Gallagher"), and requested dates for the deposition of Dr. Green.[1] (Docket entry no. 65, exhibit A). In the absence of a response, plaintiffs' counsel forwarded email communications to Weber Gallagher on November 22, 2013, and December 3, 2013, soliciting potential dates for Dr. Green's deposition. (*Id.*, exhibits B-C).

Following a series of email exchanges among counsel on December 4, 2013, the deposition of Dr. Green was

---

1. The complaint avers that Dr. Green's medical office is located at 611 Morgan Highway, Clarks Summit, and that during Dr. Green's treatment of Castillo, he was acting as the agent of his professional corporation, Women's Care Consultants, P.C., which maintains its medical practice facility at 611 Morgan Highway, Clarks Summit, (*id.* at ¶¶ 5-7). On August 9, 2013, Weber Gallagher entered its appearance on behalf of Dr. Green only. (Docket entry no. 11). On February 26, 2014, Dr. Green filed a *pro se* document entitled "notice of intend to defend," which merely states "I, Barry L. Green, President of Women's Care Consultants, hereby give notice to defend the above-titled case." (Docket entry no. 57). On that same date, Dr. Green also filed a. *pro se* "motion to vacate" which reads:

> I, Barry L. Green, President of Women's Care Consultants, move to vacate the above titled case. The plaintiffs at no time received medical care at Women's Care Consultants, 611 Morgan Highway, Clarks Summit, PA 18411, as alleged in No. 6 of the complaint. The totality of my involvement in care was provided at Moses Taylor Hospital, Scranton, Pennsylvania and not as an agent or representative of Women's Care Consultants.
> I would be happy to be present at a hearing regarding the above matter should the court find this necessary.

(Docket entry no. 58). The official docket sheet does not reflect that Dr. Green has ever served his "motion to vacate" upon any other party.

scheduled for January 31, 2014. (*Id.*, exhibits D-E). However, on December 10, 2013, Weber Gallagher cancelled that scheduled deposition upon being advised by Dr. Green "that he is now on call" on that date. (*Id.*, exhibit E). From December 11, 2013, to January 6, 2014, counsel for the parties exchanged eleven email communications in an effort to reschedule Dr. Green's deposition. (*Id.*, exhibit F at pp. 1-3). On January 7, 2014, Weber Gallagher confirmed that Dr. Green's rescheduled deposition would be conducted in Weber Gallagher's offices on March 6, 2014, at 1:00 PM. (*Id.* at p. 1).

Based upon email communications dated January 23, 2014, confirming the availability of Euceda, Castillo and all counsel for depositions on April 30, 2014, (*Id.*, exhibit G), Weber Gallagher noticed the depositions of Euceda and Castillo for April 30, 2014, at 10:00 AM in the Scranton office of Weber Gallagher. (*Id.*, exhibit H). Three days prior to the scheduled deposition of Dr. Green on March 6, 2014, Weber Gallagher forwarded a letter to plaintiffs' counsel via facsimile transmission stating that "[a] conflict has arisen which will necessitate us cancelling the deposition of Dr. Green scheduled for Thursday, March 6th." (*Id.*, exhibit I at p. 2). Since the cancellation letter was transmitted by Weber Gallagher to an outdated facsimile number, plaintiffs' counsel did not receive notice of the cancellation on that date. (*Id.* at ¶ 12). After plaintiffs' counsel was notified of the cancellation on March 5, 2014, his paralegal contacted Weber Gallagher, informed them of the correct facsimile number "as identified on all [plaintiffs' counsel's] letterhead and correspondence in this matter," and advised Weber Gallagher "that plaintiffs' counsel prefers to communicate by email or U.S. Mail, not via facsimile." (*Id.* at ¶ 13).

Between March 5, 2014, and April 10, 2014, counsel for the parties exchanged twenty-four emails in an attempt to reschedule Dr. Green's deposition, and ultimately confirmed that Dr. Green and all counsel were available to conduct Dr. Green's deposition on May 13, 2014. (*Id.*, exhibit J at pp. 1-8). On April 10, 2104, plaintiffs' counsel forwarded an email to all counsel stating that he had sent a notice of deposition scheduling Dr. Green's discovery deposition for May 13, 2014, at 11:00 AM, two weeks after the scheduled depositions of Euceda and Castillo. (*Id.*, exhibit K). However, on April 11, 2014, Weber Gallagher cancelled Dr. Green's rescheduled deposition due to a scheduling conflict. (*Id.*)

On April 15, 2014, plaintiffs' counsel emailed a letter to Weber Gallagher, stating:

Despite multiple attempts spanning more than six months, you have failed to produce Barry Green, D.O., for his deposition relative to the above matter. Please be advised that unless we have a firm date within ten (10) days for Dr. Green's deposition to be taken by the end of June, we will file a motion to compel his deposition for a date at our convenience.

(*Id.*, exhibit L). On April 21, 2014, Weber Gallagher transmitted an email to all counsel proposing three dates for Dr. Green's deposition. (*Id.*, exhibit M). Counsel for co-defendant, Moses Taylor, promptly replied that he had previously informed Weber Gallagher by email dated April 3, 2014 (i.e., in conjunction with the earlier scheduling of Dr. Green's deposition on May 13, 2014), that Moses Taylor's counsel was not available for depositions on any of those three dates. (*Id.*).

As noted above, by notice of deposition dated January

27, 2014, (*Id.*, exhibit H), Weber Gallagher scheduled the depositions of Euceda and Castillo for the morning of April 30, 2014. On April 29, 2014, at 11:18 AM, Weber Gallagher forwarded an email to plaintiffs' counsel indicating that Weber Gallagher was still awaiting potential depositions dates from Dr. Green, and inquiring whether plaintiffs' counsel was "cancelling [plaintiffs'] depositions for tomorrow." (*Id.*, exhibit N). Plaintiffs' counsel immediately replied by email that "plaintiffs' depositions are scheduled to go on as planned tomorrow" at 10:00 AM in Scranton. (*Id.*). Shortly thereafter, plaintiffs' counsel proceeded to travel from Philadelphia to Scranton in order to meet with Euceda and Castillo to prepare them for their depositions. (*Id.* at ¶19).

Unbeknownst to plaintiffs' counsel, at 2:02 PM on April 29, 2014, Weber Gallagher faxed a letter to plaintiffs' counsel, albeit to the facsimile number which Weber Gallagher had previously been informed was outdated, announcing that Weber Gallagher "would like to cancel the depositions of plaintiffs, Maria Castillo and Alex Euceda, currently scheduled for April 30, 2014." (*Id.*, exhibit O). Additionally, although Weber Gallagher later exchanged email communications with the office of plaintiffs' counsel at 2:51 PM and 3:01 PM on April 29, 2104, those email communications did not mention Weber Gallagher's desire to cancel the depositions of Euceda and Castillo. (*Id.*, exhibit P). Consequently, after plaintiffs' counsel had already arrived in Scranton, his Philadelphia law office received a telephone call from counsel for Moses Taylor inquiring whether plaintiffs' counsel had received the facsimile transmission from Weber Gallagher cancelling the depositions scheduled for the following morning. (*Id.* at ¶ 19). Plaintiffs' counsel immediately contacted Weber Gallagher's office and "requested the depositions

not be cancelled because he and plaintiffs were already in Scranton after significant travel," but were advised by Weber Gallagher's paralegal that "the depositions had already been cancelled by [Weber Gallagher]." (*Id.* at ¶ 20).

Since Weber Gallagher had thrice cancelled Dr. Green's deposition which had been scheduled for dates provided by Weber Gallagher, and plaintiffs and their counsel had incurred expenses attributable to the untimely cancellation of their depositions, Euceda and Castillo filed a motion on May 15, 2014, seeking "both the timely deposition of defendant, Barry Green, D.O., and the imposition of sanctions on defense counsel, Weber Gallagher, for precipitously and without justification cancelling plaintiffs' depositions, resulting in significant unrecoverable costs to plaintiffs and plaintiffs' counsel." (Docket entry no. 65 at ¶2). Plaintiffs sought to recover $2,260.04 in monetary sanctions, comprised of Euceda's lost income and travel expenses of $912.74 related to his Ohio employment, and attorneys' fees and travel expenses incurred by plaintiffs' counsel in the amount of $1,347.30. (*Id.* at ¶27). Immediately prior to the presentation of plaintiffs' motion in discovery motions court on May 15, 2014, special trial master Henry P. Burke reportedly "gave an introductory statement to all counsel that anyone seeking monetary sanctions was unlikely to succeed, as he rarely imposed them." (Docket entry no. 69 at ¶24). Nevertheless, by order dated May 15, 2014, the special trial master granted plaintiffs' motion to the extent that he ordered Dr. Green to appear for a deposition on August 27, 2014, and awarded monetary sanctions of $1,000.00 to plaintiffs. (Docket entry no. 64).

According to plaintiffs' counsel, once the special trial master signed the discovery order awarding sanctions,

Weber Gallagher's associate "approached [plaintiffs' counsel] and said that special trial master Burke's order granting sanctions would only prolong discovery and increase plaintiffs' costs, as Weber Gallagher would appeal the sanctions." (Docket entry no. 69 at ¶27). On May 20, 2014, plaintiffs counsel forwarded a letter to Weber Gallagher's lead counsel stating that "immediately following our discovery hearing before [the special trial master], your associate...stated that [the special trial master's] sanctions would only prolong discovery and increase our costs in this matter given your firm's intent to appeal." (Docket entry no. 69, exhibit C). In that same letter, plaintiffs' counsel further indicated that "[w]ith that in mind, let me assure you that any such appeal will result in our seeking, at the very least, the full $2,260.00 in sanctions originally sought in this matter." (*Id.*).

Dr. Green filed a timely "partial appeal" on May 27, 2014, seeking to "set aside the order of the special trial master dated May 15, 2014, insofar as it imposes sanctions upon [Dr. Green]."[2] (Docket entry no. 67 at p. 5). In support of his request to vacate the sanctions award, Dr. Green contends that "sanctions were improperly issued without any prior order of court in violation of the same." (*Id.* at ¶18). Dr. Green also argues that sanctions were imposed in error since plaintiffs' motion sought to recover

---

2. Under Lacka. Co. R.C.P. 4000.1, all discovery motions must initially be presented to and decided by the court-appointed special trial master whose ruling "may be appealed *de novo*" to the Court of Common Pleas. *See Venosh v. Henzes.* 2014 WL 3886854, at * 4 n. 3 (Lacka. Co. 2014). Local Rule 4019(a) similarly provides that "[a]ny party seeking sanctions pursuant to Pa.R.C.P. 4019...shall, in all circumstances, initially do so by motion to the special trial master pursuant to Lacka. Co. R.C.P. 4000.1." Lacka. Co. R.C.P. 4019(a). Not unlike Local Rule 4000.1(b), Lacka. Co. R.C.P. 4019(b) states that "[a]ny order of the special trial master granting or denying a sanction may be appealed *de novo*" to the Court of Common Pleas. *Fratzola v. Klepadlo*, 26 Pa. D. & C. 5th 533, 538 (Lacka. Co. 2012).

damages for Euceda's lost income and travel expenses associated with his Ohio employment, even though "the first time that [Dr. Green] became aware of [Euceda] being located in Ohio was after the filing of [Euceda's] motion." (*Id.* at ¶ 17). Noting that plaintiffs' discovery responses identify Euceda's address "as 916 South Main Street, Apartment 1, Scranton, PA," Dr. Green "submits that he cannot be held responsible for [Euceda's] lost wages and travel expenses when he reasonably believed that [Euceda] was in the Scranton area." (*Id.*). Based upon that reasoning, Dr. Green asserts that "the subject exorbitant monetary sanctions were improperly issued" and that "the imposition of sanctions should be stricken from Special Trial Master Burke's May 15, 2014 Order." (*Id.* at ¶ 21).

Plaintiffs submit that sanctions were warranted "because of [Weber Gallagher's] relentless pattern of discovery abuse and avoidance." (Docket entry no. 69 at ¶36). Plaintiffs observe that Dr. Green's "appeal motion offers no explanation or justification for Weber Gallagher's last-minute cancellation of plaintiffs' depositions and cites to no legal authority supportive of its position." (*Id.* at ¶32). Arguing that Dr. Green's discovery appeal "is frivolous and vexatious," plaintiffs have advanced a "cross-motion for additional sanctions" based upon Pa.R.C.P. 1023.1 — 1023.4. (*Id.* at pp. 6-9). Plaintiffs demand counsel fees and expenses of $2,697.30 related to their counsel's opposition to Dr. Green's discovery appeal, and assert that "[a]bsent additional sanctions, [Weber Gallagher's] assertion that special trial master Burke's order will only increase plaintiffs' costs will come to fruition." (Id at ¶¶36-37).

By notice dated June 3, 2014, the chief deputy court administrator directed Dr. Green to file his supporting brief by June 24, 2014, and plaintiffs to submit their

brief in opposition by July 15, 2014. (Docket entry no. 68). Although Dr. Green has not filed a supporting brief, plaintiffs timely filed their response and opposing brief on July 15, 2014. (Docket entry no. 69). Following the completion of oral argument on July 21, 2014, Dr. Green's discovery appeal and plaintiffs' cross-motion for additional sanctions were submitted for a decision.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

"Generally, imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court, as is the severity of the sanctions imposed." *Anthony Biddle Contractors, Inc. v. Preet Allied American Street, L.P.,* 28 A.3d 916, 926 (Pa. Super. 2011). The enforcement of our discovery rules "is governed by the facts and circumstances of each particular case," *City of Philadelphia v. Fraternal Order of Police Lodge No.5 (Breary),* 604 Pa. 267, 285, 985 A.2d 1259, 1270 (2009), and the discovery sanction must be commensurate with the culpable party's discovery violation. *See Reilly v. Ernst & Young, LLP,* 929 A.2d 1193, 1200 (Pa. Super. 2007). Decisional precedent governing discovery sanctions recognizes each of the following factors as a "necessary consideration," but not a "necessary prerequisite," when considering a request for sanctions based upon a discovery violation:

1. The nature and severity of the discovery violation;

2. The defaulting party's willfulness or bad faith in failing to comply with discovery;

3. The resulting prejudice to the other party;

4. The non-offending party's ability to cure any

prejudice; and

5. The number of discovery violations by the non-complying party[3] *Fraternal Order of Police Lodge No. 5 (Breary)*, 604 Pa. at 286, 985 A.2d at 1270-71; *Fratzola*, 26 Pa. D. & C. 5th at 539.

## (B) ABSENCE OF PRIOR DISCOVERY ORDER

Dr. Green first contends that since his counsel did not disobey an existing discovery order, monetary sanctions were erroneously assessed against him. Specifically, Dr. Green posits that the sanctions award in this case should be vacated due to the fact that "sanctions were issued without any prior order of court in violation of the same." (Docket entry no. 67 at ¶18).

While it is true that "sanctions pursuant to Pa.R.C.P. 4019 generally are imposed when a court order has been violated," it is equally clear that Rule 4019 also provides "for sanctions when there has been a discovery violation." *McGovern v. Hospital Service Association of Northeastern Pennsylvania*, 785 A.2d 1012, 1015 (Pa. Super. 2001). Rule 4019(a)(1)(viii) distinctly states that a court may enter an order imposing sanctions whenever a party or person "fails to make discovery *or* to obey an order of court respecting discovery."[4] Pa.R.C.P. 4019(a)

---

3. In cases where evidence has been excluded as a discovery sanction, the courts have also weighed the importance of the precluded evidence and the extent to which waiver of the exclusionary sanction would disrupt the orderly and efficient trial of cases in the court. *See Rohm and Haas Co. v. Lin*, 992 A.2d 132, 142 (Pa. Super. 2010), *cert, denied*, 132 S.Ct. 852 (U.S. 2011).

4. Subparagraph (g)(1) of Rule 4019 contains an independent basis for an award of "reasonable expenses, including attorney's fees," in those instances where a party or lawyer has violated an existing discovery order. Rule 4019(g)(1) provides that where a court "enters an order compelling compliance and the order is not obeyed, the court on a subsequent motion for sanctions may, if the motion is granted, require the

(1)(viii) (emphasis added). Thus, it is beyond dispute "that Rule 4019 does not require the imposition of an order compelling discovery as a prerequisite to the trial court's authority to impose an appropriate sanction." *Weist v. Atlantic Richfield Company*, 374 Pa. Super. 405, 410, 543 A.2d 142, 145 (1988) (quoting *Griffin v. Tedesco*, 355 Pa. Super. 475, 483, 513 A.2d 1020, 1023 (1986)).

Dr. Green's assertion, that an earlier order compelling discovery is a condition precedent to the imposition of discovery sanctions, lacks arguable merit. "Subdivision(a)(viii) is a blanket authorization to the court to enter a sanction order *whenever there is a failure to make discovery....*" *Id.* (emphasis in original) (quoting Pa.R.C.P. 4019 explanatory note (1978)). What must be determined, therefore, is whether Weber Gallagher's actions contravened a recognized discovery obligation under the Rules of Civil Procedure. *See Crance v. Sohanic*, 344 Pa. Super. 526, 530, 496 A.2d 1230, 1232-1233 (1985) (stating that sanctions may be imposed for "disobedience to a discovery order, or an obligation stated in the rules of civil procedure.").

## (C) SANCTIONS FOR FAILURE TO MAKE DISCOVERY

The trial court is responsible for overseeing "discovery between the parties and therefore it is within that court's discretion to determine the appropriate measures to insure the adequate and prompt discovery of matters allowed by

---

party or deponent whose conduct necessitated the motions or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses, including attorney's fees incurred in obtaining the order of compliance and the order for sanctions, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Pa.R.C.P. 4019(g)(1).

the Rules of Civil Procedure."[5] *Rohm and Haas Co.*, 992
A.2d at 143; *Uhl v. C. H. Shoemaker & Son, Inc.*, 432
Pa. Super. 230, 234-235, 637 A.2d 1358, 1360 (1994). To
that end, "Rule 4019 of the Pennsylvania Rules of Civil
Procedure permits a trial court to order sanctions where
a party fails to provide sufficient discovery." *Zauflik v.
Pennsbury School District*, 72 A.3d 773, 796 n. 32 (Pa.
Cmwlth. 2013), *app. granted in part*, 84 A.3d 293 (Pa.
2014). Judicial discretion in that regard is not unfettered,
and it is clear that "in the exercise of judicial discretion
in formulating an appropriate sanction order, the court is
required to select a punishment which 'fits the crime.'"
*St. Luke's Hospital v. Vivian*, 2014 WL 4056551, *19 (Pa.
Super. Aug. 18, 2014) (quoting *Ghaner v. Bindi*, 779 A.2d
585, 590 (Pa. Super. 2001)).

Litigants and their counsel have an obligation to act
reasonably in scheduling and conducting discovery
depositions. *See, e.g., Cravath v. Mercy Hospital*, 2013
WL 6991989, at * 2-5 (Lacka. Co. 2013) (ordering
re-deposition of defendant physician after defense
counsel objected and instructed physician not to answer
twelve separate subjects of "permissible inquiry"). In
enforcement of that discovery duty, our Rules of Civil
Procedure provide distinct authority for the recovery of
reasonable expenses, including counsel fees, for the failure

---

5. The Supreme Court of Pennsylvania has adopted special discov-
ery provisions and pre-trial procedures which apply only to professional
liability actions and are designed to expedite the disposition of such
cases. Those rules govern the production of expert reports, *see* Pa.R.C.P.
1042.26 — 1042.32, the issuance of scheduling orders, *see* Pa.R.C.P.
1042.41, and the scheduling of court-ordered mediation, case manage-
ment conferences, and pre-trial conferences. *See* Pa.R.C.P. 1042.21,
1042.41, 1042.51. Under Pa.R.C.P. 1042.51(c), each county court ad-
ministrator must file biannual reports with the Administrative Office of
the Pennsylvania Courts identifying "all medical professional liability
cases that have not been tried within nine months of a pre-trial confer-
ence scheduled pursuant to this rule."

of an opposing party or attorney to attend a scheduled deposition. Rule 4019(a)(1)(iv) governs instances where the party requesting sanctions schedules the deposition of a party or an officer or managing agent of a party, but that deponent "fails to appear before the person who is to take the deposition." Pa.R.C.P. 4019(a)(l)(iv). In that event, Pa.R.C.P. 4019(c)(5) empowers the court to issue "such order with regard to the failure to make discovery as is just," which may include an award of sanctions for counsel fees incurred by the moving party as a result of the deponent's failure to appear. *See Kirk v. St. Clair Memorial Hospital*, 37 Pa. D. & C. 3d 63, 68 (Alleg. Co. 1982) (ordering defendant to "appear for his deposition" and to "pay reasonable expenses, including counsel fees, as a result of his failure to attend the June 16, 1982 deposition."); *Kinter v. Reliance Electric Co.*, 14 Pa. D. & C. 3d 402, 407 (Alleg. Co. 1980) (since defense counsel belatedly cancelled original deposition of defendant's agent, and later cancelled that individual's rescheduled deposition "three days before the date of this deposition," trial court "grant[ed] plaintiffs' request for payment of the counsel fees incurred in scheduling and preparing for the deposition which [defendant's] managing agent failed to attend," but "den[ied] plaintiffs' request for reasonable expenses, including counsel fees, incurred in preparing and presenting the motion for sanctions.").

In addition, Pa.R.C.P. 4019(e) furnishes separate authority for an award of counsel fees in those situations where the non-moving party schedules a deposition, but fails to appear and proceed forward with the noticed deposition. Rule 4019(e) provides that if the party who schedules "a deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the

party giving the notice to pay to such other party the amount of the reasonable expenses incurred by such other party and his or her attorney in so attending, including attorney's fees." Pa.R.C.P. 4019(e). Although no reported Pennsylvania decision has applied Rule 4019(e) to a request for sanctions following an untimely cancellation of a scheduled deposition, the federal courts have relied upon essentially identical language contained in an earlier version of Fed. R. Civ. P. 30(g) and awarded monetary sanctions to parties whose counsel had already traveled to the sites of noticed depositions by the time that they were cancelled by opposing counsel.[6] Federal "[c]ourts have consistently interpreted Rule 30(g) to allow an award of expenses and attorney's fees where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other party." *Zoltek Corp. v. United States*, 2006 WL 5670861, at * 2 (Fed. CI. 2006); *Pine Lakes International County Club v. Polo Ralph Lauren Corp.*, 127 F.R.D. 471, 472 (D.S.C. 1989) (citing Wright & Miller, Federal Practice and Procedure, § 2120 (1988 Supp.)). "When the party noticing the deposition cancels the deposition at the last minute and the other party has already traveled to the site of the deposition, courts have generally been willing to impose attorney's fees and costs on the noticing party." *Zoltek Corp., supra.*

---

6. Rule 30(g)(1) previously read that "[i]f the party giving the notice of a deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the party giving the notice to pay to such other party the reasonable expenses incurred by the party and that party's attorney in attending, including reasonable attorney's fees." *Novak Site RD/RA Performing Parties v. SBC Holdings. Inc.*, 2014 WL 3508657, at * 1 (E.D. Pa. 2014). Current Federal Rule 30(g)(1) states that "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to...attend and proceed with the deposition." Fed. R. Civ. P.30(g)(1).

In the United States District Court for the Middle District of Pennsylvania, Chief U. S. District Judge Christopher C. Conner has held that "[insufficient notice of the cancellation of depositions by the noticing party, particularly when the other party has already travelled to the deposition location, warrants an award of costs and attorney's fees." *Atwell v. SPX Cooling Technologies. Inc.*, 2011 WL 2194057, at * 3 (M.D. Pa. 2011) (sanctions imposed upon counsel who noticed depositions and "unilaterally cancelled all of the depositions just one day before they were scheduled to begin" even though opposing counsel had already traveled to site of deposition). Similarly, U. S. District Judge A. Richard Caputo awarded monetary sanctions to an attorney who travelled from Scranton to Philadelphia to attend scheduled depositions which were belatedly cancelled by opposing counsel after the attorney had arrived in Philadelphia. *See Roger Dubuis North America, Inc. v. Thomas*, 2006 WL 3199141, at * 4 (M.D. Pa. 2006). *Accord Novak Site*, *supra* ("...it was unreasonable for plaintiffs' counsel to cancel the depositions the day before they were to occur, given the near certainty that defendants' counsel would be travelling on or before that day."). Federal precedent recognizes that once a party schedules a deposition, "it also retain[s] the burden of cancelling said deposition, and conveying this information to [opposing counsel] in sufficient time to prevent [opposing counsel] from incurring the expense of traveling to the site of the scheduled deposition." *Pike Lakes International County Club*, 127 F.R.D. at 472. Article II (17) of the Pennsylvania Code of Civility likewise states that "[a] lawyer should demonstrate respect for other lawyers, which requires that counsel be punctual in meeting appointments with other lawyers and considerate of the schedules of other participants in the legal process...." *Johnson v. White*, 964

A.2d 42, 50 (Pa. Cmwlth. 2009).

Compelling policy reasons exist for interpreting Pa.R.C.P. 4019(e) in the same manner as its federal counterpart, Fed. R. Civ. P. 30(g), so as to promote the prompt and economical resolution of civil cases. *See* Pa.R.C.P. 126 (mandating that the Rules of Civil Procedure "be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable."); Pa.R.C.P. 4009.1, 2012 explanatory comment (stating that discovery is governed by a proportionality standard "in order that discovery obligations are consistent with the just, speedy and inexpensive determination and resolution of litigation disputes."). Once a party or lawyer notices a deposition pursuant to Pa.R.C.P. 4007.1, [s]he bears the corresponding responsibility under Pa.R.C.P. 4019(e) to seasonably notify all counsel and parties of the cancellation of that deposition in order to avoid any needless travel and deposition preparation expenses. *See Pike Lakes International County Club, supra.* Therefore, Rule 4019(e) vests trial courts with the authority to impose sanctions against a party or attorney who fails to timely deliver notice of the cancellation of a deposition that [s]he has scheduled, as a result of which the opposing party or attorney incurs reasonably foreseeable travel and preparation costs in connection with that aborted deposition.

Dr. Green's submissions fail to proffer a single reason why plaintiffs' depositions were unilaterally cancelled by Weber Gallagher on the afternoon of April 29, 2014, approximately three hours after plaintiffs' counsel had confirmed via email that "plaintiffs' depositions are scheduled to go on as planned tomorrow." (*See* transcript of oral argument proceedings on 7/21/14 at pp. 2-10). It

was foreseeable to Weber Gallagher that plaintiffs' counsel would travel from Philadelphia to Scranton on April 29, 2014, in order to prepare Euceda and Castillo for their depositions, particularly in light of the foregoing email reaffirming that those depositions would proceed forward as scheduled. The resulting prejudice attributable to Weber Gallagher's last-minute cancellation is self-evident, as reflected by the presence of plaintiffs' counsel in Scranton at the time that the dilatory notice was first transmitted to counsel by way of an obsolete fax number. Moreover, plaintiffs' counsel attempted to cure that prejudice by immediately contacting Weber Gallagher and requesting that the depositions proceed as scheduled in light of the presence of Euceda, Castillo and their counsel in Scranton, but Weber Gallagher inexplicably refused to do so.

By the time that Dr. Green's deposition is conducted on August 27, 2014, this malpractice action will have been pending for more than fourteen months. It is inevitable that certain delays in conducting discovery may be experienced due to unforeseen developments and congested calendars of assiduous trial attorneys. But barring extenuating circumstances resulting from pending case dispositive motions, joinder of additional parties or ongoing paper discovery disputes, it is inexcusable and unacceptable for any case to be pending for more than one year without a single deposition having been conducted, as is the case in the litigation at hand.

Based upon the record submitted, remedial sanctions are warranted in the form of fees and travel expenses for plaintiffs' counsel since those costs were reasonably foreseeable to Weber Gallagher at the time that it cancelled plaintiffs' depositions. However, in light of Euceda's discovery responses indicating a Scranton

residence, his employment-related travel expenses and lost income were not foreseeable to Weber Gallagher. Consequently, the special trial master's sanctions order will be affirmed, but increased to the sum of $1,347.30 to reflect the full amount of fees and travel costs incurred by plaintiffs' counsel as a result of Weber Gallagher's violation of the deposition cancellation notice requirement. *See Sun Pipe Company v. Tri-State Telecommunications, Inc.*, 440 Pa. Super. 47, 66, 655 A.2d 112, 121 (1994) ("Only counsel fees incurred as a *direct result* of the discovery violation should be imposed as a discovery sanction except in the most egregious cases.") (emphasis in original), *app. denied*, 542 Pa. 673, 668 A.2d 1136 (1995).

(D)   CROSS-MOTION   FOR   ADDITIONAL SANCTIONS

Euceda and Castillo have also asserted a "cross-motion for additional sanctions" seeking to recover further sanctions of $2,697.30 for counsel fees and travel expenses incurred in opposing Dr. Green's discovery appeal. (Docket entry no. 69 at ¶22-39). Dr. Green has not filed a response or brief in opposition to plaintiffs' cross-motion. In their supporting memoranda of law, Euceda and Castillo predicate their request for additional sanctions upon Pa.R.C.P. 1023.1 — 1023.4. (Plaintiffs' memorandum of law in support, at pp. 2-3).

Pa.R.C.P. 1023.1 is patterned after Fed. R. Civ. P. 11, *Barcola v. Hourigan, Kluger & Ouinn, P.C.*, 82 Pa. D. & C. 4th 394, 407 (Lacka. Co. 2006), and provides that the signature of an attorney or self-represented party on a motion or other filing constitutes a certification that the claims, defenses and arguments contained therein have the requisite factual, evidentiary and legal support, and

are "not being presented for any improper purpose, such as...to cause unnecessary delay or needless increase in the cost of litigation." Pa.R.C.P. 1023.1(c). If the court determines that Rule 1023.1(c) has been violated, it may impose sanctions, including "payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *University of Scranton v. Zoning Hearing Board of City of Scranton*, 2014 WL 128850, at *4 (Lacka. Co. 2014) (citing Pa.R.C.P. 1023.1(d) and 1023.4(a)(2)(ii)). The trial court "has significant discretion in determining whether to impose sanctions" under Rule 1023.1, and "[sanctions should be granted sparingly lest they have a chilling effect on the right of all parties...to litigate a controversy to conclusion." *Com., ex rel. Fisher v. Jash Inter., Inc.*, 847 A.2d 125, 134 (Pa. Cmwlth. 2004).

Rules 1023.1 to 1023.4 set forth specific procedural requirements applicable to requests for sanctions under Rule 1023.1. First, "[a]n application for sanctions under this rule shall be made by motion, shall be made separately from other applications and shall described the specific conduct alleged to violate Rule 1023.1(c)." Pa.R.C.P. 1023.2(a). *See also* Pa.R.C.P. 1023.1, explanatory comment at ¶7 ("The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion."). Second, the motion for sanctions must include a certification that at least twenty-eight days prior to the filing of the motion, the movant served a written notice and demand upon the attorney or self-represented party who filed the challenged paper, which (a) identify "with specificity each portion of the document which is believed to violate the provisions" of Rule 1023, (b) set forth "the basis for that belief with specificity," and (c) demand "that the document or portion

of the document be withdrawn or appropriately corrected." Pa.R.C.P. 1023.2(b). This requirement is "intended to provide a type of 'safe harbor' against motions under Rule 1023.1 in that a party will not be subject to sanctions under Rule 1023.1 on the basis of another party's motion unless, after having been served with the written notice and demand, it refused to withdraw that allegation or contention or to acknowledge that it does not currently have evidence to support it." Pa.R.C.P. 1023.1, explanatory comment at ¶7. *Accord Lilac Meadows, Inc. v. Panko*, 2012 WL 5461380, at * 4 n. 2 (Lacka. Co. 2012).

Plaintiffs' cross-motion for additional sanctions must be denied for several reasons. The record is devoid of any proof that plaintiffs served a written demand upon Dr. Green to withdraw his discovery appeal, and that Dr. Green failed to do so within twenty-eight days after service of that written demand. Additionally, plaintiffs sought supplemental sanctions via a cross-motion in response to Dr. Green's "partial appeal," rather than by way of an independent motion, as required by Rule 1023.2(a). Moreover, Rule 1023.1(a) distinctly states that "Rules 1023.1 through 1023.4 do not apply to...discovery motions that are subject to the provisions of general rules." Pa.R.C.P. 1023.1(a). Finally, although Dr. Green has been unsuccessful with his discovery appeal, there is no reported case law applying Rule 4019(e) and awarding sanctions based upon the belated cancellation of a noticed deposition that was scheduled by the non-moving party. *See Lasavage v. Smith*, 2011 WL 2853697, at * 9 (Lacka. Co. 2011) (denying motions for sanctions under Rule 1023.1, noting that "[i]n challenging the enforceability of [plaintiff counsel's] advance conflict waiver, [defendants] did not have the benefit of any Pennsylvania precedent addressing comment 22 [to Rule Prof. Cond. 1.7] and its

'informed consent' requirements" and concluding that defendants "were dealing with a blank decisional slate that invited 'creativity in pursuing factual or legal theories.'") (quoting Pa.R.C.P. 1023.1, explanatory comment at ¶ 2). For all these reasons, plaintiffs' cross-motion for additional sanctions will be denied.[7]

## ORDER

And now, this 20th day of August, 2014, upon consideration of the "partial appeal of special trial master's order dated May 15, 2014, filed by defendant, Barry Green, D.O." and "plaintiffs' cross-motion for additional sanctions," the exhibits attached thereto, plaintiffs' memorandum of law, and the oral argument of counsel on July 21, 2014, and based upon the reasoning set forth above in the foregoing memorandum, it is hereby ordered and decreed that:

1. The *de novo* discovery appeal filed by defendant, Barry Green, D.O., pursuant to Lacka. Co. R.C.P. 4000.1 is denied;

2. The special trial master order of May 15, 2014, is affirmed to the extent that it granted plaintiffs' motion for sanctions, but vacated to the extent that it awarded sanctions in the amount of $1,000.00;

3. In accordance with Pa.R.C.P. 4019(e), sanctions are awarded to plaintiffs and against defendant, Barry Green, D.O., in the sum of $1,347.30; and

4. Plaintiffs' cross-motion for additional sanctions is denied.

---

7. It also bears noting that Rule 1023.4(b)(1) provides that "[m]onetary sanctions may not be awarded against a represented party for violation of Rule 1023.1(c)(2)." Pa.R.C.P. 1023.4(b)(1).